## The Realty Co. v. Borough of Port Vue et al.

*Lee C. Beatty, Richard W. Ahlers, Maurice Chaitkin* and *Robert Mellin,* for petitioner.

*Oliver K. Eaton* and *Harry M. Jones,* for respondent.

McNAUGHER, J., April 15, 1936.—The final decree in this case was affirmed on appeal on April 22, 1935 (318 Pa. 374). On December 19, 1935, plaintiff presented a petition to foreclose its lien and an order was thereupon entered granting a rule upon defendant, the Borough of Port Vue, to show cause why foreclosure should not be granted. Defendant filed an answer admitting all of plaintiff's averments of fact but alleging that to order foreclosure and sale to satisfy the entire debt, as prayed for, would be in effect to amend and enlarge a decree after it had become a final judgment, and that we are without authority in the premises. The matter now comes before us for disposition, following oral argument and the submission of briefs.

At the outset it must be observed that by its answer defendant, without pleading any extenuating circumstances, admits that it has failed to comply with any part of the requirements of the decree, which the Supreme Court held to be generously moderate in its terms. Plaintiff has not been paid anything on account of interest and nothing whatever has been done to create a sinking fund.

Defendant relies upon a proposition which, when first stated, sounds plausible though utterly inequitable, and that is that the principal debt is not due, since there is no acceleration clause in the bonds; a sale could not, therefore, be ordered for the recovery of more than the overdue interest; and in case of sale plaintiff would lose the principal of its bonds because its lien would be divested. If all of this were so, we could not enforce the decree without gross injustice to plaintiff; there would then be a right without a remedy; and a deliberately defaulting debtor would be permitted to take advantage of its own wrong.

But we do not find ourselves in that ineffectual position. The borough covenanted in its bonds that it had already established and that it would maintain a sinking fund for the redemption of the bonds at maturity. In the bonds it is certified:

"That provision has been made out of the revenues of the waterworks of the said borough to pay the interest on the said bonds and the principal thereof as required by the constitution and laws of the Commonwealth of Pennsylvania."

Payments made into a sinking fund are instalments of principal. The admission that nothing has been paid into the sinking fund is an admission that the borough has defaulted in payment of instalments of principal, not to plaintiff, it is true, but to a fund of which the borough was the trustee: Brooke et al. v. City of Philadelphia et al., 162 Pa. 123; Equitable Trust Co. of N. Y. v. Green Star Steamship Corp. et al., 291 Fed. 650.

In the third paragraph of the decree it was ordered:

"That the borough defendant shall on or before October 1, 1935, make payment to plaintiff of the amount specified in paragraph one with interest, and any intervening interest coupons together with interest thereon, and *establish a sinking fund for the sole purpose of amortization of the debt represented by the bonds held by plaintiff,* and, on or before December 31, 1937, pay there-

into the whole amount which will then be required under the terms of the bonds."

It was required that defendant establish a sinking fund on or before October 1, 1935, and hence there is default as to this in addition to the default as to payments of interest.

The decree provides in paragraph 4:

"That if it shall appear to the court that the borough has failed to comply with the provisions of paragraph three hereof, a *foreclosure of plaintiff's lien upon the borough's interest in the water works and system* to satisfy defaults will be ordered."

"Plaintiff's lien" is referred to in the chancellor's adjudication in the third conclusion of law as follows:

"The water bonds 1922 were at the time of issue, January 1, 1923, and now are, *a first lien* against defendant's water plant and its property, pipes, lines, and other appliances and appurtenances, franchises for the operation thereof, and its gross revenues."

The lien covers the entire waterworks system which, in the nature of things, cannot be divided so that a part could be sold in satisfaction of existing defaults. A foreclosure must necessarily involve a sale of the entire property.

Although default in payment of interest or in establishing a sinking fund does not, under the bond contract, operate to mature the principal debt, there being no acceleration clause, a sale of the premises on account of such defaults would effect a virtual foreclosure on the principal debt, and would divest its lien: West Branch Bank v. Chester, 11 Pa. 282.

Equity requires that the creditor, in order to protect itself, be permitted, at a sale divesting its lien, to bid in the property if necessary to the full extent of its claim, excluding interest beyond the date of sale, regardless of the fact that payment of the whole amount may not yet be due and that it, as lienholder, if the property be sold to another, participate in the fund created by the sale up to the total of principal of the bonds and the interest due.

There is authority for the relief indicated.

Dundas v. Crain, District Court Philadelphia, February 7, 1821, MS, according to the notation in 6 Vale's Pennsylvania Digest 8631, holds that "A mortgage is payable out of the proceeds of a sheriff's sale, though not due according to its terms."

In 3 Jones on Mortgages (8th ed.), sec. 2491, we find this:

"When property is sold under a mortgage or deed of trust to satisfy one instalment of the debt before the others have matured, and there is no provision that the whole debt shall be due and payable upon a default upon any part of it, the trustee holds any surplus there may be, after satisfying the expenses and the part of the debt then due, subject to the same lien as the property was. The mortgagor has no claim to it."

And in the latter part of Sec. 2083:

"Generally, a sale of the whole estate, when there is no order for a sale in parcels for an instalment due before the principal amount, exhausts the remedy of the creditor, and passes a clear title to the purchaser. In such a case the creditor may retain from the proceeds of the sale enough to satisfy unpaid installments not yet due."

Howell v. Western R. R. Co., 94 U. S. 463, involved a situation very analogous to the present. At page 466 the court said:

"There can, in fact, be but one decree of foreclosure of the same mortgage on the same property, and it is a necessity of that foreclosure, under the principles of the Court of Chancery, that all the sums secured by that mortgage must be protected according to their priority of lien.

"We are of opinion, then, that there is due from the railroad company to plaintiff the amount of his overdue and unpaid coupons.

"For this sum, whatever it may be, he has a right to a decree *nisi*, according to the chancery practice,—a decree which will ascertain the sum so due, and give the com-

pany a reasonable time to pay it, say ninety days or six months, or until the next term of the court, in the discretion of that court. If this sum is not paid, the court must then order a sale of the mortgaged property, with a foreclosure of all rights subordinate to the mortgage, with directions to bring the purchase-money into court. If the case proceeds thus far, the plaintiff will have a lien on the money thus paid into court, not only for his overdue coupons, but for his principal debt, and it must be provided for in the order distributing the proceeds of the sale. If, however, the company shall pay the sum found due in the decree *nisi*, no further proceeding can be had until another default of interest or of the principal.

"In this manner full justice will be done the appellant, and no wrong to the appellees."

Olcott v. Bynum et al., 17 Wall. (84 U. S.) 44, involved a deed of trust with power of sale. Pertinent language in the opinion of the court, beginning at page 62, is the following:

"If a mortgage provide that upon default in the payment when due of a part of the amount secured the whole shall become due and may be collected, such a stipulation is valid and may be enforced.

"So where a bond contains such a stipulation it may be enforced accordingly in an action at law. But the bond in this case as recited in the mortgage contained no such stipulation. On the contrary the mortgage, while it authorized a sale of the entire property in the event of any default, expressly provided that if there should be a sale, the amount 'then due', with costs and charges, should be retained, and the overplus, if any, paid over 'unto the party of the first part, his heirs, administrators, or assigns.' Such a clause has not the effect to make the entire debt due and collectible upon the first default. But the property being incapable of division without injury, and having all been properly sold together, yielded a fund sufficient to pay the whole debt, as well the instalments underdue as the one overdue. Under these circumstances it

was proper at once to pay the former as well as the latter, stop the interest, and extinguish the entire liability. The lien of the mortgage continued upon the fund as it subsisted upon the premises before they were sold. If a court of chancery had administered the fund it would have so applied it. Such is the settled rule in equity".

We quote also, and at some length, from Fowler v. Johnson, 26 Minn. 338:

"We make no question that a party executing a mortgage may make it security for anything he pleases—for the entire principal and interest of the debt, or for the principal alone, or the interest alone, or only for a part of the principal, or a part of the interest; and it may be assumed that in a mortgage executed to secure the entire debt, principal and interest, it may be stipulated that if the mortgagee shall exercise his right to foreclose under the power, when only a part of the debt—say an installment or instalments of interest—is due, the mortgage shall cease to be security for the remainder, and shall be reduced to a security only for the amount then due. But we must say that the intention to provide for a result so extraordinary, so contrary to the expressed general purpose of the mortgage, and so apparently without adequate motive, should be expressed clearly and unmistakably, and so that no other interpretation consistent with the general purpose of the mortgage would be admissible.

"Whether plaintiff's claim, that on this foreclosure there should have been paid to the mortgagee only the part of the debt then due and payable by the terms of the notes, with the costs and charges of sale, and the remainder to the mortgagor, would have the effect to cut down the mortgage to security merely for the amount then due and payable, depends on the effect of the sale on the mortgage. If there still remained the right to enforce the mortgage, for the remainder of the debt, it would not be cut down. But if that sale, the entire mortgaged property having been sold, exhausted his security, then the claim of plaintiff would reduce the mortgage, in the case of a foreclosure

before the entire debt became payable, to security merely for the amount then payable. . . .

"Our conclusion is that, under a power of sale in a mortgage, payable in instalments, there can be but one sale of the same tract; that such sale, although made when only a part of the mortgage debt is due, is made on account of the entire mortgage, and exhausts its lien; and that the proceeds of the sale must be applied, *first*, toward satisfaction of the amount then due on the mortgage debt, and costs of sale; *second*, if there be a surplus, to the part of the mortgage debt not then payable; and *third*, if there be then any surplus, it is to be paid to the mortgagor; so that the security of this mortgagee, as against the land mortgaged, is gone, and he must look to the fund made by the sale. If, out of this, he can receive only the amount due and payable at the time of the sale, and the overplus must be paid to the mortgagor, then his security is cut down to security for the amount then due, and is lost to him as to the residue.

"The parties to the mortgage surely never intended any such result".

Defendant complains that to allow plaintiff to recover at a sale the whole amount of the principal debt and the interest then due would be to enlarge a final judgment. We do not regard the remedy to be applied as enlarging but rather as giving effect to the decree. Otherwise it would become for practical purposes an idle gesture.

Plaintiff's rule for foreclosure will be made absolute and we will, according to equitable principles, enter an order of foreclosure which will make adequate provision for the protection of plaintiff's interest and, at the same time, safeguard the supply of water to the borough's consumers.

### Decree of foreclosure

And now, to wit, April 15, 1936, after hearing upon rule to show cause why plaintiff's lien should not be foreclosed, upon consideration of the petition and the answer

filed thereto and after argument of counsel, rule absolute, and it is ordered, adjudged and decreed as follows:

1. That defendant, Borough of Port Vue, has failed to comply with the provisions of the decree of this court entered July 10, 1934, requiring it to pay to plaintiff the sum of $6,994.64, with interest, together with the amount of interest coupons thereafter falling due up to October 1, 1935, with interest thereon from the respective due dates thereof, nor has any part thereof been paid, and that on October 1, 1935, there was due as interest, in accordance with the provisions of said decree, the sum of $9,931.62; that since October 1, 1935, an additional instalment of interest, in the amount of $775, has fallen due, so that the total amount of interest coupons in default, together with interest thereon from the respective due dates thereof, calculated as of this date, is in the sum of $10,-997.25, all of which is still due and unpaid.

2. That defendant, Borough of Port Vue, has failed to comply with the provisions of said decree requiring it to establish a sinking fund for the amortization of the debt represented by the bonds held by plaintiff.

3. That defendant, Borough of Port Vue, is in further default in failing to pay the costs accrued in these proceedings.

4. That the waterworks, system, pipes, lines and appurtenances thereof are operated by the Borough of Port Vue as a complete unit and no integral part thereof can be sold without impairing or destroying the usefulness of the remainder, and hence the entire property must be sold as a whole.

5. That foreclosure of plaintiff's lien is now directed to be had against the interest of the Borough of Port Vue in and to its entire waterworks, system, pipes, lines and appurtenances thereof as now constituted, all situate in the Borough of Port Vue, Allegheny County, Pa., together with the franchises and all accounts receivable, current and delinquent, arising from the operation of said waterworks and system, as the same appear on the books

of the defendant borough, and that all of said property be sold at public sale; that the real estate forming a part of the property to be sold, as aforesaid, is that which the Port Vue Water Company conveyed to the Borough of Port Vue by deed dated December 30, 1922, and recorded in the recorder's office of Allegheny County in deed book vol. 2144, page 576.

6. That, for the purpose of such sale, the amount and extent of plaintiff's lien against the property of the Borough of Port Vue, consisting of its entire waterworks system, appurtenances, franchises and revenues, is hereby fixed to be in the sum of $31,000, representing the principal debt, together with the sum of $10,997.25, being the interest due to this date, to wit, April 15, 1936, making a total of $41,997.25, to which shall be added the sum of $2,178.25, being the costs that have thus far accrued in these proceedings.

7. That Charles G. Lane, Jr., Esq., is hereby appointed master, whose sole duty it shall be to sell the entire waterworks system and appurtenances, as now constituted and hereinabove described, belonging to the said Borough of Port Vue, together with the franchises and accounts receivable, current and delinquent, arising from the operation of said waterworks and system, as the same appear on the books and records of the defendant borough; the said master to give bond approved by this court in the sum of $50,000 before assuming his duties. The sale shall be held in the rotunda of the City-County Building, Pittsburgh, Allegheny County, Pa., on June 15, 1936, at 2 p. m. (e. s. t.).

8. That all of said property shall be sold to the highest and best bidder, free, clear and discharged of all liens and encumbrances; 20 percent of the successful bid shall be paid when the property is sold and the balance promptly after confirmation of such sale. In the event that plaintiff herein is the successful bidder, the master is hereby authorized to credit against such bid so much of plaintiff's

claim or lien as herein fixed as may be necessary to equal said bid, or to credit the entire amount of said lien if the bid should be in a sum equal to or in excess thereof, provided, however, that if the said property is sold to plaintiff on a bid less than the amount of its lien, plaintiff shall pay in cash to the master on or before delivery of deed all of the costs that have accrued, as well as the expenses of said sale; that, in the event the property is sold for a sum in excess of plaintiff's lien and costs, the master shall make return thereof and the proceeds of said sale shall be distributed by him as the court may thereafter direct; the said master is hereby authorized and empowered to reject any and all bids that in his judgment are inadequate and to adjourn the sale from time to time if, in his judgment, this is necessary to be done in order to assure an advantageous sale. In the event the successful bidder fails to pay the balance of the purchase money after confirmation of sale and demand therefor by the master, the 20 percent deposit made by such bidder shall be deemed forfeited and shall be retained by the master as liquidated damages for the breach of such bidder's obligation, and thereafter shall be applied by the master to make good any deficiency arising by reason of a resale of the property, including the costs and expenses thereof, and the balance, if any, shall be reported to this court for such disposition as may thereafter be ordered.

9. That notice of said sale shall be given to the public by advertisement in the Pittsburgh Press and the Pittsburgh Legal Journal once a week for four weeks, the last advertisement to appear not less than five days prior to the time fixed for sale. Said advertisement shall contain a description of the property to be sold, and the time, place, terms and conditions of said sale. In addition, a notice to the same effect shall be posted upon the premises of the waterworks of the defendant borough and also in at least six prominent places in the said Borough of Port Vue, all of said posters to be displayed at least 30 days before the date fixed for sale.

10. That after said property has been sold, the master shall within three days thereafter make return thereof to this court, and, upon confirmation thereof, he shall convey the property so sold to the purchaser or purchasers thereof by such deeds or other instruments as may be necessary, except, as hereinabove stated, in case the property is purchased by plaintiff, conveyance of said property shall not be made until said plaintiff has paid to the master the full amount of the costs that have accrued in these proceedings, as well as the expenses of said sale.

11. The Borough of Port Vue, through its proper officers, is hereby directed to turn over possession of said waterworks system and all records and accounts relating to the operation thereof to the purchaser or purchasers thereof immediately after notice of confirmation of sale has been duly served upon it. And the said Borough of Port Vue, its officers, servants, agents and employes are hereby restrained from interfering in any manner whatsoever with the operation of said waterworks system by the purchaser or purchasers thereof after possession has been taken as aforesaid.

12. In order to insure continuous supply of water to the public, the purchaser or purchasers are hereby directed to maintain without interruption the operation of the waterworks and system in the same manner as provided by the Borough of Port Vue, retaining in service as many of the personnel presently therein employed, and for as long a period, as may be found necessary for that purpose. The purchaser or purchasers shall, immediately after the confirmation of sale, make application to the Public Service Commission of the Commonwealth of Pennsylvania for a certificate of public convenience evidencing the right to continue thereafter the operation of the waterworks. Until such certificate of public convenience is issued, the operation by the purchaser or purchasers shall be subject to the control of this court.

NOTE.—The foregoing decree directing a sale was stayed when defendant cured the defaults and complied with the terms of the original decree.